IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RANDY HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 06-3334-CV-S-GAF |
| | ) | |
| **SURREY VACATION RESORTS, INC.** | ) | |
| **d/b/a GRAND CROWNE RESORTS** | ) | |
| **and LISA FRANKE, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court is Defendants Surrey Vacation Resorts, Inc. d/b/a Grand Crown Resorts ("Surrey") and Lisa Franke's ("Franke") (collectively "Defendants") Motion for Summary Judgment on Counts I, II, III, IV, V, VI, VII, VIII, and IX of Plaintiff Randy Harris's ("Plaintiff") Second Amended Complaint ("Complaint"). (Doc. #87). Defendants contend case law readily disposes of each of the above claims in Plaintiff's Complaint on the undisputed facts. (Doc. ##87, 100). Plaintiff contends genuine issues of material fact remain that distinguish Plaintiff's claims from the cases Defendants cite. (Doc. #92). For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED on Counts I, II, III, IV, V, VI, VIII, and IX. Defendants' Motion is DENIED with respect to Count VII.[1]

---

[1] Defendants' Motion to Strike Affidavit and related request for attorney's fees (Doc. #101) is DENIED. Nevertheless, the Court will take into consideration instances where Plaintiff attempts to controvert his prior testimony with a subsequent affidavit in determining what facts are undisputed. The Court is aware that conclusory allegations in an affidavit that controvert a plaintiff's deposition testimony are generally insufficient to overcome summary judgment. *See Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) *and City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 475 (8th Cir. 2006).

1

**DISCUSSION**

**1.     Facts**

Plaintiff is a citizen and resident of Vernon County, Missouri. (Compl. ¶2). Defendant Surrey is a corporation organized under the laws of Missouri with its principal place of business in Taney County, Missouri. *Id.* at ¶3. Defendant Franke is a citizen and resident of the state of Arizona. *Id.* at ¶4.

In October of 1998, Plaintiff was convicted of felony possession of a firearm and drug charges in Helena, Montana. (Harris Dep., Vol. 1, 10:1 to 11:4). While serving his sentence in federal prison, Plaintiff, on or about October 2000, pled guilty in Jackson County, Missouri to felony distribution, delivery, and manufacture of a controlled substance. *Id.* 15:5-15. While in prison, Plaintiff was a "shot caller"[2] for an organization called the Aryan Brotherhood or Skinheads. *Id.* at 99:10 to 100:8. When Plaintiff got out of prison he could bench press 415 pounds. (Defendant's Exhibit ("DEX") 5, p.4, ¶3). Aside from his given name, Randy Harris, Plaintiff is also known by the disc jockey name "Raven" and has the name "Raven" tattooed on his head. (Harris Dep., Vol. 1, 32:5-16).

Surrey hired Plaintiff on or about April 26, 2004. (DEX 4). Prior to his hiring, Plaintiff submitted an employment application to Surrey in which he indicated he had not been convicted of a felony within the previous five years. (DEX 6). Plaintiff admits the application was not truthful, but states he does not remember filling it out yes or no and that Surrey was aware of all his criminal convictions when they hired him out of a halfway house. (Harris Dep., Vol. 1, 38:2 to 39:3). He began work for Surrey as a telemarketer about three days after getting out of federal prison. *Id.* at 33:17-22. Christine McDowell ("McDowell") was Plaintiff's supervisor during the entire time he

---

[2]In his role as a "shot caller," Plaintiff states, "People came to me when they needed to take care of stuff and asked my opinion about it." (Harris Dep., Vol. 2, p. 99:22-25).

worked for Surrey.³ *Id.* at 55:4; Barthels Aff. ¶3. Plaintiff contends all managers who were above him at Surrey were his supervisors. (Harris Dep., Vol. 1, 55:18-24). According to Plaintiff, Franke was one of his supervisors because she managed an office on Surrey's premises in her position as administrative assistant. *Id.* at 56:7-22. Plaintiff claims he went to Franke for advice and that Franke would on occasion, though not on a daily basis, give him direction with regard to handling his duties. *Id.* at 57:4-19; 58:5 to 59:16.

Plaintiff worked at Surrey's locations on Primrose Avenue and Glenstone Avenue in Springfield, Missouri. *Id.* at 52:22-25. He was transferred from the Primrose location to the Glenstone location on November 21, 2005. *Id.* at 52:20 to 53:20. During the time Plaintiff worked for Surrey, he was responsible for keeping accurate records of the time he worked, requesting necessary changes, and reviewing and signing the records to ensure their accuracy. (Barthels Aff. ¶12). Plaintiff contends Surrey, as a matter of policy, adjusted his time to forty hours per week regardless of whether he clocked in for more than forty hours or was required to be at work for more than forty hours. (Harris Dep., Vol. 1, 95:9-15; Harris Dep., Vol. 2, 20:17 to 22:21). He identified Arlan Graves, Janet Peterson, and Crystal England as those responsible for altering his time cards. (Harris Dep., Vol. 1, 74:17 to 76:4. Thus, according to Plaintiff, it mattered little whether he clocked in or out. *Id.* at 95:9-15.

Whatever the case regarding time manipulation, Plaintiff agreed Surrey ceased manipulating time records after January 2005. (Harris Dep., Vol. 2, 18:21 to 19:6). Aside from one week in 2004 and one week in 2005, Plaintiff signed all of his time cards from the start of his employment. (Workman Aff. ¶6; DEX 15). On April 26, 2004, Plaintiff also signed a time clock procedure statement which mandated he keep accurate time records. (DEX 7). Surrey avers it paid Plaintiff

---

³Christine McDowell is now known as Christine Barthels.

according to the payroll records he submitted. (Workman Aff. ¶5). Plaintiff's supervisor states Plaintiff was told not to work off the clock and not to work overtime without approval. (Barthels Aff. ¶14). Plaintiff states he has never seen Surrey's payroll records but maintains they were manipulated. (Harris Dep., Vol. 1, 93:16-25). He further admits he is the only one who clocked himself in and out. *Id.* at 95:16-25.

Defendant Franke also worked at Surrey's Glenstone location where her title was Administrative Assistant for the Vice President of Operations, Kim McDonald ("McDonald"). (Barthels Aff. ¶¶7-8; Harris Dep., Vol 1, 56:18-22). Franke worked in the Travel Club Department while Plaintiff worked in the Telemarketing Department; these departments were separated by a glass barrier. (Barthels Aff. ¶7; Harris Dep., Vol. 1, 111:3-11). According to McDowell, Franke did not have authority to hire, fire, discipline, or negatively reassign Plaintiff. *Id.* at ¶9. Plaintiff admits no one told him Franke had authority to fire him. (Harris Dep., Vol. 1, 57:15-16). He nevertheless contends Franke had previously exercised authority to fire someone in the telemarketing department although he could not remember the person's name, date of the firing, or circumstances. (Harris Dep., Vol 2, 118:2-22). Plaintiff alleges whatever her title, Franke acted as an office manager who oversaw twenty to thirty employees and that he was directed to go to her for help if he had questions or concerns. *Id.* at 57:20 to 58:4; 111:1-11; 117:9-23.

Plaintiff claims on or about Friday, January 25, 2005 Franke called him and asked him to hook up a compact disc player in her apartment. (Harris Dep., Vol. 1, at 61:23 to 62:1; Harris Dep., Vol. 2, 54:13 to 55:12). Plaintiff went to Franke's apartment accompanied by Mike Russell ("Russell"). (Harris Dep., Vol. 2, 54:13 to 55:12). When they arrived at Franke's apartment, Plaintiff alleges Franke disrobed, tried to disrobe Plaintiff, touched Plaintiff's genitals on one occasion, and tried to have sex with Plaintiff. *Id.* at 60:7 to 61:15; 66:2-6. According to Plaintiff, Franke pushed him onto a bed and he resisted when she tried to disrobe him. *Id.* at 61:1-8. Franke expressed anger at Plaintiff

4

when he did not have an erection but consented to let Plaintiff leave when Russell called him from the other room. *Id.* at 66:10-16. Plaintiff states Franke cursed him all the way to the door and continued to do so on the phone after the events. *Id.* at 72:1-3. During this time, Russell was in the apartment attempting to hook up the compact disc player. *Id.* at 60:17-19. Plaintiff states the incident involving Franke and his subsequent termination caused his present inability to hold down a job. *Id.* at 68:16-24.

Shortly before he was hired by Surrey, Plaintiff signed an acknowledgment stating he had received and read Surrey's Employment Manual. (DEX 8). The sexual harassment policy in place at the time, which was included in the Employment Manual, prohibited sexual harassment and instructed employees to make prompt complaints of sexual harassment to allow for investigation by Surrey. (DEX 9, p. VI-9 to VI-10). Thus, on February 1, 2005, Plaintiff made a complaint of sexual harassment regarding Franke's conduct to Surrey. (Harris Dep., Vol. 1, 164:16-20). Following Plaintiff's complaint, McDonald and McDowell requested Plaintiff fill out a statement, which Plaintiff did. (Harris Dep., Vol. 2, 45:13 to 46:20).

Toshia Workman ("Workman"), human resources liaison for Surrey, interviewed witnesses with regard to Plaintiff's complaint on or about February 22, 2005. (Workman Aff. ¶3; DEX 10). Workman decided the best course of action was to write Franke up with a final written warning because Franke "used poor judgment when she contacted an employee at work while the employee was on the clock,...invited the employee to her home where she was later accused of threatening th[e] employee's job if he did not engage in sexual interactions with her" ... and "[t]he accusations are reinforced with a witness statement." (DEX 10). With regard to Plaintiff, Workman recommended he be permanently placed at the Primrose location because Plaintiff stated "he could not work in the same building as [Franke]", had excessive absences, was insubordinate, argued with his manager, and denied documented facts with regard to a request for day shift duties and FMLA leave. *Id.* Plaintiff

disputes the accuracy of the observations Workman made in his affidavit accompanying his opposition to Defendants' Motion. (Harris Aff. ¶20).

In his deposition, Plaintiff admitted Franke did nothing to cause him stress after he made his complaint other than to show up for work. (Harris Dep., Vol. 1, 164:16-20). Nevertheless, in the affidavit submitted with his opposition to Defendants' Motion, Plaintiff avers Franke continued to verbally abuse him, accused him of lying, and lied about her own harassment. (Harris Aff. ¶19).

From February 19 until March 1, 2005, Plaintiff was on voluntary leave from Surrey. (Harris Dep., Vol. 2, 161:1-25). Prior to returning from leave, McDowell contacted Plaintiff by phone to warn him there could be no more outbursts or cursing toward employees. (DEX 11; DEX 16). Prior to this discussion, on February 18, 2005, Plaintiff had been witnessed loudly accusing McDowell of calling him a "fucking liar." (DEX 12). Plaintiff again disputes in his affidavit accompanying his opposition to summary judgment that he engaged in outbursts toward others at work. (Harris Aff. ¶21). When Plaintiff returned to work on March 1, 2005, despite his agreement to refrain from verbal abuse, Plaintiff called coworker Debbie Clinger "a lying backstabbing witch." (DEX 13). Plaintiff was immediately terminated. *Id.* According to Plaintiff's deposition, Workman or Rhonda Stucinski fired him. (Harris Dep., Vol. 2, 23:17-24). Attempting to supplement that testimony by affidavit, Plaintiff alleges Franke participated in his termination as well "and directed [him] to vacate the building." (Harris Aff. ¶12). At the time, Surrey's Employment Manual prohibited both insubordination and interference with fellow employees. (DEX 9, p. X-2).

Surrey made the decision to discharge Plaintiff prior to learning of Plaintiff's claims concerning overtime. (Barthels Aff. ¶¶4, 11). Plaintiff admits no supervisors at Surrey knew he had filed an overtime complaint with the United States Department of Labor until after he was terminated. (Harris Dep., Vol. 1, 124:3 to 125:25).

After Surrey terminated Plaintiff, Plaintiff first collected unemployment and then worked at between seven and nine different jobs. *Id.* at 16:15-25. According to an assistant manager at Surrey, immediately after Plaintiff was informed of his termination, he said, "So I'm fired; that's alright, that's just what my lawyer wanted you to do. You just made me rich." (DEX 14). Plaintiff filed suit in the Circuit Court for Greene County, Missouri on July 28, 2006. (Doc. #1). Defendant subsequently removed the case to this Court and filed the instant Motion for Summary Judgment. (Doc. ##1, 87).

**II.     Standard**

Defendants' Motion for Summary Judgment is filed pursuant to Fed. R. Civ. P. 56 ("Rule 56"). Rule 56 states summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Genuine issues of material fact remain if sufficient evidence exists for a reasonable jury to find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The Court reviews the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

The moving party bears the initial burden of showing no genuine and material fact disputes remain. *Id.* If successful, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To show a genuine and material fact issue exists, the nonmoving party must go beyond the pleadings and allege specific facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1988). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) *citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-90 (1968).

The Court can grant summary judgment against a party who fails to sufficiently establish a genuine issue of fact for trial relating to an essential element of his claim which he bears the burden to establish at trial. *Celotex*, 477 U.S. at 327. "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). Rule 56 should thus be applied "to isolate and dispose of factually unsupported claims." *Prudential Ins. Co.*, 121 F.3d at 366.

**III.   Analysis**

Despite some differences between the Missouri Human Rights Act ("MHRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), as a general matter "Missouri Courts have adopted federal Title VII case law when interpreting analogous discrimination statutes in the Missouri Human Rights Act." *Brady v. Curators of Univ. of Missouri*, 213 S.W.3d 101, 113 (Mo. Ct. App. 2006) (citations omitted); *see also Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 637 (8th Cir. 2000) *citing Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994) ("MHRA guided by federal employment discrimination decisions which '"are applicable and authoritative under the MHRA."'"). The Court will thus combine its analysis of Plaintiff's state and federal law claims where those claims correspond to one another.

*A.   Counts I & IV*

Pursuant to Title VII and the MHRA, Counts I and IV of Plaintiff's Complaint allege Surrey discriminated against Plaintiff based on his sex. Under Title VII, an employer cannot "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).

To make a submissible case of sex discrimination, Plaintiff must demonstrate he "(1) is a member of a protected class; (2) was qualified to perform [his] job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated persons of the opposite sex." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 693 (8th Cir. 2001) *citing Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999). When a Plaintiff's claim of discrimination is based on indirect evidence of discrimination, the claim falls under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *LaCroix*, 240 F.3d at 693. Under *McDonnell Douglas*, once the employee makes out a prima facie case of discrimination, "[a] burden of production then arises upon the employer 'to articulate some legitimate, nondiscriminatory reason for' the employment action." *Schoonover v. Schneider Nat'l Carriers, Inc.*, 492 F. Supp. 2d 1103, 1130 (S.D. Iowa 2007) *citing McDonnell Douglas*, 411 U.S. at 802; *Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133, 142 (2000); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If the employer is successful in doing so, the employee has a fair opportunity "to show that [the employer]'s stated reason for [the adverse employment action] was in fact pretext." *Id. citing McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 253.

In this case, Surrey appears to concede the prima facie case for purposes of summary judgment and instead offers a nondiscriminatory reason for its action. In short, Surrey claims it terminated Plaintiff because of a tirade against a fellow employee despite prior warnings to refrain from such outbursts and intimidation. Surrey also presents credible evidence Plaintiff had previously engaged in verbal outbursts in relation to management. The Eighth Circuit has unequivocally held "that insubordination and violation of company policy are legitimate reasons for termination." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (citations omitted).

Though Plaintiff alleges Surrey's legitimate and nondiscriminatory reason for his termination was pretextual, Plaintiff does not point to any conduct or statements by Surrey that would allow a reasonable jury to infer Plaintiff's reason for termination was a pretext. *See id.* Plaintiff points to his productivity and success as Surrey's employee in support of his allegation but fails to cite for the Court those parts of the record that support his claims. In sum, Plaintiff relies on the same facts upon which he relied to establish his prima facie case and his mere allegations of pretext are insufficient to create a genuine issue of material fact for a jury. Defendant's Motion with regard to Counts I and IV is therefore GRANTED.

### B. Counts II & V

Pursuant to Title VII and the MHRA, Counts II and IV of Plaintiff's Complaint allege claims of sexual harassment against Surrey. To establish a prima facie case of sexual harassment, a plaintiff must demonstrate "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action." *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006) (citation omitted). In cases where the perpetrator's authority is properly alleged to be that of a supervisor, the plaintiff is relieved of the burden of showing the employer knew or should have known of the harassment and failed to take proper remedial action. *See Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007).

In this case, no dispute about the first three elements exists. "The fourth element involves both objective and subjective components." *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004) (citation omitted). Thus, to prove harassment affected a term, condition, or privilege of employment, a plaintiff must generally show the harassment was "'severe or pervasive enough to

create an objectively hostile or abusive work environment'" and the victim must subjectively believe that his working conditions have been altered. *Id. citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Courts "view the 'totality of the circumstances' in determining whether there is a hostile work environment due to sexual harassment." *Id.* (citation omitted). Factors considered relevant to the determination include "the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job." *Id.* (citation omitted). Generally, "[m]ore than a few isolated incidents are required," and the alleged harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment." *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) *citing Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir.1999). Because Title VII sexual harassment criteria are designed to be difficult to meet, an actionable claim requires a plaintiff to meet a high standard. *Id. at* 720-21.

In this case, the Court doubts a reasonable jury could conclude Plaintiff's alleged harassment was sufficient to objectively affect a term, condition, or privilege of his employment. Plaintiff admits in his deposition that Franke did nothing other than appear for work to cause him distress after he made his harassment complaint. Though severe, only one incident of harassment is alleged. Further, Franke's behavior did not interfere with Plaintiff's performance. Plaintiff and Franke worked in separate departments and Plaintiff admits he was never told Franke had authority to fire him.

Even if the harassment was pervasive and severe enough to affect a term, condition, or privilege of Plaintiff's employment, no reasonable jury could conclude Franke was Plaintiff's supervisor. "[T]o be considered a supervisor, 'the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties.'" *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007) (citations omitted). Further, "[t]he fact that an alleged harasser may have

been a 'team leader' with the authority 'to assign employees to particular tasks' will not be enough to make that person a supervisor." *Id.* at 883-84 *citing Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1057 (8th Cir. 2004) (fact that alleged harasser was team leader responsible for ensuring proper assembly line function and for assigning tasks on assembly line did not make the alleged harasser a supervisor). Here, accepting Plaintiff's unsupported averments of Franke's authority as true, at most Franke acted to assign tasks and facilitate proper functioning of the office. She had no power to fire, hire, promote, reassign, or take any tangible employment action against Plaintiff. Thus, Plaintiff must prove the fifth element of the prima facie case.

With respect to the fifth element, no evidence exists to show Surrey failed to take proper remedial action. McDowell and McDonald immediately instructed Plaintiff to write a statement and Workman promptly interviewed witnesses and decided on a course of action to address the problem. As an additional consideration, "courts have held that generally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from the workplace setting..." unless the alleged victim "is forced to work for, or in close proximity to, someone who is harassing [him] outside the workplace." *Duggins ex rel. Duggins v. Steak'N Shake, Inc.*, 3 Fed. Appx. 302, 311 (6th Cir. 2001) *citing Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir.1992); *McGuinn-Rowe v. Foster's Daily Democrat*, 1997 WL 669965 (D. N.H. July 10, 1997); *Temparali v. Rubin*, 1997 WL 361019 (E.D. Pa. June 20, 1997); *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991). In this case, all the alleged harassment occurred after hours, off the work site, and at a non-work-related voluntary social meeting. After Plaintiff reported the after-hours incident, Surrey planned prompt steps to ensure harassment would not reoccur and did not affect Plaintiff's work. Surrey did not force Plaintiff to work for or in close proximity to


12

Franke after the incident but rather planned to further separate them. Defendants' Motion is therefore GRANTED with respect to Counts II and V.

> C. Count IX

Count IX is a claim for sexual harassment against Franke under the MHRA. The MHRA provides a cause of action for sexual harassment against employers. Mo. Rev. Stat. § 213.055. Under its definitions section, the MHRA defines an employer as "the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer, but does not include corporations and associations owned and operated by religious or sectarian groups." Mo. Rev. Stat. § 213.010.

In this case, Franke does not represent the state or any of its political subdivisions. She does not employ six or more persons. She was not directly acting in the interest of her employer because she engaged in the harassment after work hours, away from the place of employment, and in circumstances unrelated to any of her job duties. For the same reasons, Franke is not liable as an agent of her employer pursuant to Title VII. *See* 42 U.S.C. 2000e(b) (defining employer); 42 U.S.C. 2000e-2(a) (authorizing cause of action against employers); *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377, 381 (8th Cir. 1995) ("supervisors and other employees cannot be held liable under Title VII in their individual capacities") (citation omitted). Defendants' Motion is therefore GRANTED with respect to Count IX.

> D. Counts III & VI

Counts III and VI are claims against Surrey for retaliation alleged pursuant to the MHRA and Title VII. "To present a prima facie case of retaliation, a plaintiff must show that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." *Kiel*, 169 F.3d at 1136 *citing Montandon v. Farmland*

13

*Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir.1995). As with claims of discrimination, where there is indirect evidence of retaliation, analysis of the retaliation claim falls under the burden-shifting framework of *McDonnell Douglas*. *See Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (citations omitted).

In this case, Surrey again appears to concede Plaintiff meets the prima facie case of retaliation and relies on *McDonnell Douglas* to discredit Plaintiff's claim. Surrey offers a legitimate, non-retaliatory reason for its employment action in that it fired Plaintiff for failing to heed warnings regarding verbal outbursts. Plaintiff admits he engaged in at least one verbal outburst: the one Surrey points to as cause for his termination. Surrey and its employees could reasonably fear verbal workplace outbursts from a convicted felon who could bench press 415 pounds. Further, Plaintiff again fails to offer evidence Surrey's reason for his termination was a pretext for retaliation and relies only the evidence offered to establish a prima facie case. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Id. citing Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir.1997); *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir.1996). Defendants' Motion is therefore GRANTED with respect to Counts III and VI.

    E.    Count VII

Count VII of Plaintiff's Complaint alleges Surrey failed to pay Plaintiff overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. ("FLSA"). As a general matter, an employee cannot claim overtime pay with regard to time records the employee falsified. *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) *citing Mortenson v. W. Light & Tel. Co.*, 42 F. Supp. 319 (D. Iowa 1941); *Dollar v. Caddo River Lumber Co.*, 43 F. Supp. 822 (W.D. Ark.1941).

In this case, Plaintiff was responsible for keeping track of his hours, verifying their accuracy, and requesting necessary changes. Surrey avers it paid Plaintiff according to the payroll records he submitted. Plaintiff nevertheless contends Surrey, as a matter of policy, adjusted his time to forty hours per week regardless of whether he clocked in for more than forty hours or worked more than forty hours. In light of the nature of Plaintiff's claim, Defendants' evidence Plaintiff was entirely responsible for his submitted time records does not dispose of the underlying fact issue. Plaintiff identified Arlan Graves, Janet Peterson, and Crystal England as those responsible for altering his time cards after he submitted them. If, as Plaintiff claims, Surrey operated with an unwritten policy that employees would be required to work more than forty hours per week but would not be paid overtime, Plaintiff's responsibility for initially submitting accurate time cards does not undermine the genuine issue of material fact regarding Defendant's subsequent alteration of the records. As such, Defendants' Motion is DENIED with respect to Count VII.

F.     *Count VIII*

Count VIII alleges retaliation on the part of Surrey under the FLSA. To establish a prima facie case of retaliation under the FLSA, a plaintiff must show "he participated in statutorily protected activity, that [the employer] took an adverse employment action against him, and that there was a causal connection between them." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031 (8th Cir. 2005). Here, Plaintiff cannot establish a causal connection between his termination and his statutorily protected activity. Plaintiff admits Surrey did not know he had filed a claim for overtime pay at the time he was terminated. "[A] causal link between statutorily protected activity and an adverse employment action 'does not exist if the employer is not aware of the employee's statutorily protected activity.'" *Smith v. Riceland Foods, Inc.*, 151 F.3d 813 (8th Cir. 1998) *quoting Wolff v. Berkley, Inc.*, 938 F.2d 100, 103 (8th Cir.1991). Defendants' Motion is therefore GRANTED with respect to Count VIII.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED with respect to Counts I, II, III, IV, V, VI, VIII, and IX of Plaintiff's Complaint. Defendant's Motion is DENIED with respect to Count VII.

**IT IS SO ORDERED.**

                                                        /s/ Gary A. Fenner
                                               GARY A. FENNER, JUDGE
                                               UNITED STATES DISTRICT COURT

DATED:   7/24/08